Case No: 5:26-CV-00320-D-RN

# UNITED STATES DISTRICT COURT for the

## Eastern District of North Carolina

### Eastern Division

FILED

JUL 3 1 2026

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

## First Amended Complaint

Plaintiff files this First Amended Complaint to correct defendant identification, clarify factual allegations, and add factual allegations concerning credit reporting disputes and reinvestigations.

Plaintiff further amends this Complaint to correct the identification of Defendant American Recovery Services. Plaintiff alleges that American Recovery Services is the intended Defendant and updates the Defendant information, service information, and related allegations accordingly.

# I. Parties to This Complaint

## B. The Defendant(s)

### 5. NC RECOVERY SERVICES, INC-Thomas G. Smith

Repossession company involved in the seizure of Plaintiff's vehicle.

1380 NC Hwy 50 South

Benson, Unknown

NC, 27504

Unknown

**6. ERIE INSURANCE COMPANY**

Plaintiff contends that Erie Insurance participated in insurance placement, backdating of policy documents, maintenance of an incorrect lienholder designation, policy actions allegedly taken without Plaintiff's authorization, and other conduct described in this Complaint.

100 Erie Insurance Place

Erie, Unknown

PA, 16530-0001

Unknown

# II. Basis for Jurisdiction

## B. Supplemental Jurisdiction (28 U.S.C. § 1367)

The Court has supplemental jurisdiction over related state-law claims, including:

- Wrongful repossession
- Breach of contract
- Negligence
- Conversion
- Improper sale of collateral
- Failure to provide required notices
- Unfair and deceptive trade practices (UDTPA)
- Insurance regulatory violations
- Emotional distress damages

## C. Diversity Jurisdiction (Alternative Basis)

Diversity jurisdiction exists under **28 U.S.C. § 1332** because:

- Plaintiff is a citizen of North Carolina;
- Defendants Consumer Portfolio Services, Inc, Platinum Pre-Owned, Prancer, American Recovery Services (ARS), and ERIE are citizens of different states;
- The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

Plaintiff seeks actual damages for the destruction of personal property, consequential damages for the loss of employment and housing, statutory damages under federal law, treble damages under N.C. Gen. Stat. § 75-1.1, and punitive damages. **Accordingly, the amount in controversy exceeds $75,000.00.**

## D. Personal Jurisdiction

This Court has personal jurisdiction over all Defendants because:

- Defendants purposefully directed business activities toward North Carolina residents;
- Defendants caused injury to Plaintiff within North Carolina;
- Consumer Portfolio Services, Inc (CPS), American Recovery Services (ARS), and NC Recovery conducted repossession and collection activities in North Carolina;
- Platinum Pre-Owned LLC and Prancer engaged in financing, credit reporting, and insurance-related conduct that caused harm in North Carolina;
- ERIE participated in insurance steering and policy actions affecting a North Carolina consumer.

Defendants' alleged conduct caused substantial harm to Plaintiff within this District.

# III. Statement of Claim

# Key Facts

### 1. Contract Irregularities & Misrepresentations

- Plaintiff was not provided accurate disclosures.
- Financing terms were misrepresented.
- Contract documents contained inconsistencies and possible unauthorized alterations.

### 2. Improper Account Handling (Consumer Portfolio Services, Inc)

- Consumer Portfolio Services, Inc failed to properly credit payments.
- Consumer Portfolio Services, Inc reported inaccurate information to credit bureaus.
- Plaintiff was not provided required notices of default or right to cure.

### 3. Wrongful Repossession (May 2025)

- Repossession agents damaged Plaintiff's personal property.

- Plaintiff contends that she lost her employment after losing her primary means of transportation.
- Plaintiff's vehicle was repossessed without proper notice.

NC Recovery representatives stated that "North Carolina doesn't require we show you anything." However, the circumstances of my account are more complex than a purely North Carolina transaction.

The vehicle was purchased in Pennsylvania and remained registered in Pennsylvania throughout my ownership. The vehicle carried Pennsylvania tags and registration, was insured through a Pennsylvania policy, and underwent annual Pennsylvania inspection and emissions testing. All registration, insurance, and inspection requirements were current at the time of repossession.

In addition, I maintained residences in both Pennsylvania and North Carolina. Given these facts, it is unclear how CPS and its agents determined which state laws governed the repossession process, disposition notices, deficiency notices, personal property notices, and other legally significant communications.

I question whether notices that may have been required based upon the vehicle's Pennsylvania registration, Pennsylvania purchase, and my Pennsylvania residence were properly provided. I further question how CPS determined my legal residence for notice purposes when it was aware, or should have been aware, that I maintained connections to both states.

Plaintiff has not been provided copies of notices allegedly sent before or after repossession, including notices relating to repossession, right to cure, sale of collateral, deficiency balances, disposition of personal property, transfer of ownership, and collection activity.

Plaintiff further contends that Defendants have not identified the addresses used, the dates of mailing, proof of mailing, or the basis upon which they determined which state's notice requirements applied

## 4. Post-Repossession Violations

- Plaintiff was not provided a lawful Notice of Intent to Sell.
- Plaintiff was not provided a lawful Deficiency Notice.
- Plaintiff received information indicating that the debt was sold or assigned to multiple entities and that conflicting balances were asserted by those entities.
- Storage and sale fees were inflated or unlawful.

## 5. Credit Reporting Harm (Consumer Portfolio Services. Inc)

- Consumer Portfolio Services, Inc (CPS) furnished inaccurate information.
- Consumer Portfolio Services (CPS) Inc failed to conduct reasonable investigations.
- Plaintiff suffered denials of credit, increased costs, and reputational harm.

## 5A. Credit Reporting Disputes and Reinvestigations

Plaintiff disputed the account with Experian, Equifax, and TransUnion on multiple occasions and also submitted disputes directly to Consumer Portfolio Services, Inc. and through complaints submitted to the Consumer Financial Protection Bureau (CFPB).

Following those disputes, Plaintiff received reinvestigation results and updated credit reports from the consumer reporting agencies.

Plaintiff contends that inaccurate information continued to be reported despite repeated disputes and reinvestigations, including disputed balances, payment history, charge-off information, account status, repossession-related information, and other account information described in this Complaint.

Plaintiff further contends that the account was not consistently reported as disputed despite repeated disputes submitted to the furnishers and consumer reporting agencies.

Plaintiff received updated credit reports reflecting revisions to prior reporting; however, Plaintiff contends that material inaccuracies remained uncorrected, including inconsistent balances, account history, payment information, and information concerning the charge-off and disposition of the vehicle.

Plaintiff also submitted identity-theft and fraud-related documentation, including supporting identification and reporting documents, and contends that the account remained reported despite those submissions.

As a result of the continued reporting of disputed information, Plaintiff contends that she suffered damage to credit, denial of credit opportunities, increased costs, and other harms described in this Complaint.

## 6. Insurance Misconduct (Erie Insurance Company)

Erie Insurance engaged in improper and unlawful insurance practices, including:

- **Backdating an insurance policy** to a date when Plaintiff did not possess the vehicle.
- **Accepting or participating in steering** from the dealership.
- **Erie claimed referrals are perfectly legal** between the dealership and Erie.

- **Creating or activating a policy without Plaintiff's authorization.**
- **Misrepresenting that Plaintiff approved the backdating.**
- **Plaintiff contends that these actions were inconsistent with state insurance requirements governing policy issuance, consent, disclosures, and anti-steering practices.**

# iii. Statement of Claim (Cont)

## A. The Vehicle Purchase and Initial Misrepresentations (2021)

1. In 2021, Plaintiff purchased a motor vehicle from Defendant Platinum Pre-Owned LLC in Pennsylvania.
2. At the time of sale, Platinum Pre-Owned LLC engaged in a deceptive "spot delivery" or "yo-yo financing" scheme by allowing Plaintiff to take the vehicle home while falsely representing that financing had been approved.
3. Platinum Pre-Owned LLC failed to provide Plaintiff with required disclosures, including: a. A separate **Odometer Disclosure Statement**; b. A copy of the **FTC Buyers Guide**; c. A **Notice of Right to Rescind**; d. A **written itemization of the amount financed**; e. A **written Adverse Action Notice** after the initial financing failed.
4. Platinum Pre-Owned LLC charged Plaintiff a **$34.00 "Notary/Messenger Fee"** despite the contract containing **no notary stamp, no notary signature, and no notary commission information**, rendering the fee a **phantom finance charge**.
5. Platinum Pre-Owned LLC also charged Plaintiff **$1,000 for GAP insurance**, despite Plaintiff never signing for such coverage.
6. These phantom fees and unauthorized add-ons disputed by Plaintiff caused the **Finance Charge** and **APR** disclosed on the contract to be mathematically inaccurate, violating the **Truth in Lending Act (TILA)**.
7. Plaintiff disputed an $1,800 portion of the down payment after discovering alleged irregularities in the transaction documents. Following that dispute, Plaintiff contends that actions were taken through the PennDOT registration process that resulted in a registration suspension and required Plaintiff to pay $1,800 plus a $104 restoration fee to restore the registration.

## B. Insurance Steering and Lienholder Misrepresentation

8. Platinum Pre-Owned LLC coerced Plaintiff into using **Erie Insurance**, a company with which the dealership had a pre-existing relationship.
9. Platinum Pre-Owned LLC contacted Erie Insurance directly and **listed Prancer Capital Corp. as the lienholder.**
10. Plaintiff relied on the dealership's representation that Prancer had approved the financing and would not have taken the vehicle home otherwise.

Case 5:26-cv-00320-D-RN     Document 14     Filed 08/03/26     Page 6 of 23

11. Prancer later admitted in complaint submitted to the CFPB that they **did not know why they were listed as lienholder,** contradicting the dealership's prior representations concerning financing approval and lienholder status.

## C. Prancer's Denial and ECOA Violations

12. Prancer denied Plaintiff's initial credit application but **failed to issue a written Adverse Action Notice** as required by the **Equal Credit Opportunity Act (ECOA).**
13. Plaintiff contends that this statement reflects a failure to provide the written adverse action notice required by ECOA.
14. Prancer made statements to Plaintiff and in CFPB submissions that Plaintiff contends were inconsistent regarding the denial and lienholder status.

## D. Consumer Portfolio Services, Inc's Assumption of the Account and Deceptive Accounting

15. Defendant **Consumer Portfolio Services, Inc ("CPS")** later assumed servicing of the account.
16. Despite this, CPS refused to issue a **Form 1099-C,** claiming the charge-off was "internal."
17. CPS's description of its role in the transaction. The vehicle was purchased through a dealership, and my understanding is that the retail installment contract was assigned to CPS. Despite this, CPS has represented in recorded call that it financed the transaction and/or identified itself as the **"Original Creditor"** in writing. These representations appear inconsistent with CPS's status as an assignee of the contract.
18. CPS subsequently sold the debt to **Southern Financial Capital Group** and **Stradford Group &Associates** for conflicting amounts ($19,865.14 vs. $21,179.88) while the account was under active dispute.
19. Plaintiff contends that these actions are relevant to her claims concerning account reporting, debt sale practices, dispute handling, and violations of the FCRA, FDCPA, and UDTPA.

## E. Defective Notice of Intent to Sell

20. CPS issued a Notice of Intent to Sell that Plaintiff later obtained through materials submitted to the CFPB.
21. The Notice stated only that the vehicle would be sold **"on or after** a date, without providing: a. The **exact time** of sale; b. The **location** of sale; c. Instructions for exercising the **Right of Redemption.**
22. Plaintiff contends that this Notice did not comply with N.C. Gen. Stat. § 25-9-614 because it omitted the information described above and that the disposition of the vehicle was not commercially reasonable under N.C. Gen. Stat. § 25-9-610.

23. Plaintiff seeks the statutory remedies available under N.C. Gen. Stat. § 25-9-625.

## E1. Failure to Identify Applicable Law and Required Notices

24. Plaintiff maintained ties to Pennsylvania during the relevant time period, including vehicle registration, vehicle inspection, and a residential address in Pennsylvania.
25. During and after the repossession, Plaintiff was informed by agents and representatives that certain notices and documentation were not required or had already been provided.
26. Plaintiff contends that Defendants have failed to identify which state's law they relied upon in determining notice requirements, how Plaintiff's residency was determined, what notices were allegedly mailed, the dates such notices were mailed, or the address to which such notices were sent.
27. Plaintiff further contends that Defendants have failed to provide documentation sufficient to establish compliance with applicable notice requirements relating to default, repossession, disposition of collateral, redemption rights, adverse action notices, and other disclosures referenced in this Complaint.
28. These issues are relevant to Plaintiff's claims concerning repossession procedures, notice requirements, debt collection practices, disposition of collateral, and consumer-protection violations.

## F. Illegal Repossession and Breach of the Peace (May 13, 2025)

29. On **May 13, 2025**, Defendants **NC Recovery Services** arrived at Plaintiff's residence in Rocky Mount, North Carolina, to repossess the vehicle.
30. Plaintiff was physically present and **verbally objected**, repeatedly ordering the Recovery agents to leave her property.
31. Despite Plaintiff's objections, the Recovery agents continued the repossession, creating a disturbance.
32. During a communication following the repossession, Mr. Tullgren of PK Willis stated, "I'm sorry that you had a bad experience with the tow company."
33. Under **N.C. Gen. Stat. § 25-9-609**, any repossession conducted over a debtor's objection or involving a disturbance constitutes a **breach of the peace** and is unlawful.
34. Plaintiff contends that CPS later reported to the CFPB that the repossession occurred on May 14, 2025, whereas Plaintiff's records, including a CAD report, indicate that the repossession occurred on May 13, 2025.

## G. Malicious Destruction of Property

35. During the repossession, NC Recovery's agents **mixed Plaintiff's personal property with rocks and gasoline**, destroying over **$7,200** in professional equipment and belongings.
36. Plaintiff possesses a witness statement that corroborates the agents' refusal to leave and the events described above.

37. Plaintiff contends that the conduct described above supports claims for conversion, trespass to chattels, and intentional infliction of emotional distress.

## H. Consequential Damages: Loss of Job and Home

38. The wrongful repossession deprived Plaintiff of her only means of transportation.
39. As a direct result, Plaintiff lost her employment.
40. The loss of income caused Plaintiff to fall behind on rent, resulting in a. Formal eviction; b. Three weeks of out-of-pocket hotel expenses at the Residence Inn; c. Outstanding landlord debt; d. Months of rental cars for travel back and forth to PA from NC.
41. Plaintiff contends that these damages were foreseeable consequences of the conduct described in this Complaint.

## I. Debt Sold During Active Dispute

42. Plaintiff disputed the debt verbally, in writing and through the CFPB.
43. Despite these disputes, CPS sold the debt to Southern Financial Capital Group, LLC and Stradford Group & Associates while the account remained disputed. Plaintiff contends that this conduct violated 15 U.S.C. § 1692g(b).
44. CPS continued collection efforts and reported conflicting balances to credit bureaus.

## J. Ongoing Harm

45. Plaintiff continues to suffer financial, emotional, and reputational harm due to Defendants' actions, including inaccurate credit reporting, unresolved debt sales, and the loss of transportation, employment, and housing.

# IV. Claims for Relief

## Federal Claims

- Fair Credit Reporting Act (FCRA)
- Fair Debt Collection Practices Act (FDCPA)
- Truth in Lending Act (TILA)
- Federal consumer protection violations

## State-Law Claims

- Wrongful repossession
- Breach of contract
- Negligence

- Conversion
- Improper sale of collateral
- Failure to provide required notices
- Unfair and deceptive trade practices (UDTPA)
- Insurance regulatory violations
- Emotional distress damages

# V. Injuries

Plaintiff suffered:

- Loss of vehicles
- Loss of employment
- Loss of income
- Damage to credit
- Denial of credit opportunities
- Emotional distress damages
- Out-of-pocket expenses
- Loss of personal property
- Increased insurance and financing costs
- Reputational harm

# VI. Relief Requested

Plaintiff requests:

- Loss of personal property (~$7,200)
- Hotel expenses
- Rental vehicle expenses
- Lost wages
- Damages resulting from inaccurate credit reporting
- Emotional distress
- Statutory damages
- Treble damages under N.C. Gen. Stat. § 75-16
- Punitive damages
- Injunctive relief requiring correction of credit reports
- Costs and fees
- Any other relief the Court deems just and proper

# VI. REGULATORY COMPLAINTS & CONTRADICTIONS

## A. Plaintiff's Regulatory Complaints

46. Plaintiff submitted formal complaints to the **Consumer Financial Protection Bureau (CFPB), Federal Trade Commission (FTC), PA Department of Motor Vehicles, Florida Office of Financial Relations** regarding the conduct of CPS, Prancer, Platinum Pre Owned LLC, and the subsequent debt buyers.
47. Plaintiff also submitted complaints to the **Pennsylvania Attorney General**, the **North Carolina Attorney General**, and other regulatory bodies regarding the dealership's yo-yo financing practices, disputed add-on products, insurance steering, and the unlawful repossession.
48. Each Defendant received notice of Plaintiff's allegations through these regulatory channels.

## B. Defendants' Contradictory Statements to Regulators

49. Plaintiff contends that CPS reported to the CFPB that the repossession occurred on May 14, 2025, whereas Plaintiff's records, including a CAD report and recordings, indicate that the repossession occurred on May 13, 2025.
50. Plaintiff contends that the Notice of Intent to Sell did not comply with North Carolina law because it omitted the time, location, and redemption information described above.
51. Plaintiff contends that the Surplus/Deficiency Notice was inconsistent with UCC Article 9 requirements and other account information provided by CPS.
52. Prancer provided contradictory statements to Plaintiff and regulators, claiming: a. Plaintiff was denied financing; b. Prancer "does not give out denial paperwork"; c. Prancer "did not know why they were listed as lienholder" on Plaintiff's insurance documents; d. Despite this, Prancer allowed the dealership to list them as lienholder and did not correct the record.
53. Plaintiff contends that these contradictory statements are relevant to her claims concerning lending disclosures, account representations, and regulatory compliance.

## C. Defendants' Failure to Respond to Certified Mail ("Green Sheets")

54. Plaintiff sent multiple certified letters to CPS, ARS, and other Defendants disputing the debt, requesting validation, and demanding documentation.
55. Plaintiff possesses **certified mail receipts ("green sheets")** showing that Defendants received these letters.
56. Certain Defendants did not provide substantive responses to Plaintiff's disputes and requests for documentation despite receiving notice of them.
57. Plaintiff contends that the lack of substantive responses hindered her ability to obtain information concerning the account, debt transfers, and disposition of the vehicle.

## D. Defendants' Failure to Respond to Disputes

58. Plaintiff sent certified disputes, requests for validation, CFPB complaints, and other regulatory complaints regarding the conduct described herein.
59. Defendants received notice of Plaintiff's allegations through certified mail, CFPB complaints, Attorney General complaints, and other regulatory submissions.
60. Certain Defendants failed to provide substantive responses to Plaintiff's disputes and requests for documentation.
61. Plaintiff contends that these failures are relevant to the issues of willfulness, good faith, investigation of disputes, and the damages alleged in this Complaint.
62. Plaintiff contends that the conduct described above is relevant to her claim for treble damages under the North Carolina Unfair and Deceptive Trade Practices Act.

## E. Debt Sold During Active Investigation

63. Despite receiving notice of Plaintiff's disputes through certified mail and the CFPB, CPS sold the debt to **Southern Financial Capital Group, LLC** and **Stradford Group & Associates** while the account was under active investigation.
64. Plaintiff contends that this conduct violated 15 U.S.C. § 1692g(b), which prohibits certain collection activity on disputed debts until validation is provided.
65. Southern Financial Capital Group, LLC and Stradford Group & Associates continued collection efforts and reported conflicting balances to credit bureaus, further compounding the harm.

## F. Regulatory Admissions Through Uploaded Documents

66. The Notice of Intent to Sell and Surplus/Deficiency Notice were uploaded by CPS to the CFPB portal in response to Plaintiff's regulatory complaint.
67. Plaintiff contends that these documents did not contain the information required by UCC Article 9 and are relevant to Plaintiff's claims concerning notice requirements, redemption rights, disposition of the vehicle, and the reporting of account balances.
68. These documents will be attached as **Exhibit G**.

## G. Pattern of Evasion and Non-Compliance

69. The contradictory statements, inconsistent documentation, and responses submitted to regulators demonstrate a pattern of inconsistent representations regarding Plaintiff's account and the conduct alleged in this Complaint.
70. Plaintiff contends that these inconsistencies support her claims for actual, statutory, treble, and punitive damages where permitted by applicable law.

# VII. EMPLOYEE MISCONDUCT

## A. CPS Employee "Irma" — "No Need to Provide Accounting"

71. Plaintiff recorded a telephone conversation with **"Irma,"** an employee in CPS's Trade Line Department.
72. In this recording, Irma admitted that CPS **"Charged-Off"** Plaintiff's account in 2022.
73. Irma further admitted that charge off was done **specifically to facilitate the sale of the debt**, despite the account being under active dispute.
74. This admission contradicts CPS's written refusal to issue a **Form 1099-C**, which CPS claimed they would not provide because the charge-off was "internal." While **Irma** stated 1099-C would only be provided if the loan was satisfied.
75. Plaintiff contends that Irma's statements are inconsistent with CPS's representations regarding the account, charge-off status, and sale of the debt, and are relevant to Plaintiff's claims concerning account reporting and servicing practices.

## B. CPS Employee "Isabel" — False Statements About Federal Law and Cooling-Off Rights

76. Plaintiff recorded a separate call with **"Isabel,"** a CPS Redemption representative.
77. During this call, Isabel stated that **"Our Laws Are Legally Binding"**
78. Isabel further stated that Plaintiff had **"No Cooling-Off Period"** and no right to rescind or challenge the contract, despite federal and state laws requiring accurate disclosures and prohibiting deceptive practices.
79. Plaintiff understood these statements as discouraging her from challenging the account, exercising her rights, or pursuing further investigation of the transaction.
80. Plaintiff contends that Isabel's statements are relevant to Plaintiff's claims concerning consumer disclosures, misrepresentation, and unfair or deceptive business practices.

## C. Prancer Employee — Admission of ECOA Violation and Lienholder Contradiction

81. Plaintiff recorded a call with a representative of **Prancer Capital Corp.**
82. During this call, the Prancer employee stated: **"We don't give out denial paperwork."**
83. Plaintiff contends that this statement reflects a failure to provide the written adverse action notice required by ECOA.
84. The same employee also stated that Prancer **"did not know why they were listed as lienholder"** on Plaintiff's Erie Insurance policy.
85. This contradicts the dealership's representation that Prancer had approved the financing and was the lienholder.
86. Plaintiff contends that these contradictory statements are relevant to her claims concerning financing approval, lienholder designation, and compliance with federal lending requirements.

Case 5:26-cv-00320-D-RN    Document 14    Filed 08/03/26    Page 13 of 23

## D. PK Willis / ARS Employee — Statements Regarding Interactions During Repossession

87. In a recorded call, an employee of PK Willis / Asset Recovery Solutions acknowledged that interactions occurred between the agents and Plaintiff during the repossession. Mr. Tullgren further stated that, because the vehicle was already hooked to the tow truck, no breach of the peace occurred.
88. Under **N.C. Gen. Stat. § 25-9-609**, any repossession involving a disturbance or conducted over the debtor's objection constitutes a **breach of the peace** and is unlawful.
89. Plaintiff contends that this statement is consistent with her allegation that the repossession involved a disturbance and occurred over her objection.

## E. NC Recovery Services Agents — Trespass, Refusal to Leave, and Property Destruction

90. On May 13, 2025, agents of **NC Recovery Services** entered Plaintiff's private driveway to repossess the vehicle.
91. Plaintiff was physically present and repeatedly ordered the agents to leave her property.
92. Plaintiff repeatedly requested that the agents leave the property. Despite those requests, two agents remained on Plaintiff's porch and attempted to obtain the vehicle keys. One agent held the screen door open while another engaged Plaintiff in a verbal exchange as Plaintiff objected to the repossession and objected to being searched. A third agent repeatedly moved between his vehicle, the tow truck, and Plaintiff's vehicle in the driveway.
93. The agents refused to leave and continued the repossession over Plaintiff's objections.
94. During the repossession, NC Recovery's agents **mixed Plaintiff's personal property with rocks and gasoline**, destroying over **$7,200** in professional equipment and belongings.
95. Plaintiff possesses a witness statement that corroborates the events described above.
96. Plaintiff contends that the conduct described above supports her claims for trespass, conversion, breach of the peace, and intentional infliction of emotional distress.

## F. Vicarious Liability for Employee Misconduct

97. Each employee identified above acted within the scope of their employment and under the authority of their respective employers.

98. Plaintiff alleges that the employee conduct described above was undertaken within the scope of employment and that the respective employers may be liable under applicable principles of agency and respondeat superior.

# VIII. EVIDENCE OF WILLFUL MISCONDUCT & RECORDED ADMISSIONS

## A. One-Party Consent Recordings (North Carolina Law)

99. North Carolina is a **one-party consent state** under N.C. Gen. Stat. § 15A-287, permitting Plaintiff to lawfully record telephone conversations without notifying the other party.
100. Plaintiff alleges that all recordings referenced in this Complaint were lawfully obtained and accurately reflect the statements made during those conversations.

## B. Recording: CPS Employee "Irma" Tradeline Department— "It Was Charged Off With Us"

101. Plaintiff recorded a call with CPS employee **Irma,** during which Irma admitted that CPS previously charge-off account in 2022.
102. Irma further admitted that the charge off was done to facilitate the sale of the debt, despite the account being under active dispute.
103. Plaintiff contends that this recording is inconsistent with CPS's written statements regarding the account's charge-off status and is relevant to Plaintiff's claims concerning account reporting, debt sale practices, and account servicing.
104. A transcript of this recording will be attached as **Exhibit B-1**.

## C. Recording: CPS Employee "Isabel" — False Statements About Federal Law

105. Plaintiff recorded a call with CPS representative Isabel, who stated that CPS's "internal laws are legally binding" and override federal consumer protection laws.
106. Isabel also stated that Plaintiff had "no cooling-off period" and no right to rescind or challenge the contract.
107. Plaintiff contends that these statements were inaccurate and are relevant to Plaintiff's claims concerning consumer disclosures, misrepresentation, and unfair or deceptive business practices.
108. A transcript of this recording will be attached as **Exhibit B-2**.

## D. Recording: Prancer Capital — Admission of ECOA Violation

109. Plaintiff recorded a call with a Prancer representative who stated: **"We don't give out denial paperwork."**
110. Plaintiff contends that this statement is inconsistent with ECOA requirements concerning written adverse action notices following a credit denial.
111. The same representative also stated that Prancer **"did not know why they were listed as lienholder"** on Plaintiff's insurance documents.
112. Plaintiff contends that these statements are inconsistent with representations regarding the financing transaction and lienholder designation and are relevant to Plaintiff's claims concerning lending disclosures and account representations.
113. A transcript of this recording will be attached as **Exhibit B-3**.

## E. Call Recording Admission: PK Willis / ARS — "Hooked" while still on my property

114. During a recorded communication, an employee of PK Willis / Asset Recovery Solutions stated that the agents maintained that no breach of the peace occurred because the vehicle had already been hooked to the tow truck while still on Plaintiff's property.
115. Under **N.C. Gen. Stat. § 25-9-609**, any repossession involving a disturbance or conducted over the debtor's objection constitutes a **breach of the peace** and is unlawful.
116. This admission will be attached as **Exhibit E-1**.

## F. Video and Photographic Evidence of Property Destruction

117. Plaintiff possesses video and photographic evidence showing that NC Recovery's agents **mixed Plaintiff's personal property with rocks and gasoline**, destroying over **$7,200** in professional equipment and belongings.
118. These images will be attached as **Exhibit A-2**.

## G. Certified Mail Receipts ("Green Sheets")

119. Plaintiff sent multiple certified letters to CPS, ARS, and other Defendants disputing the debt, requesting validation, and demanding documentation.
120. Plaintiff possesses certified mail receipts indicating delivery and receipt of these letters.
121. Plaintiff contends that these failures to respond are relevant to her claims concerning dispute handling, investigation of disputed information, and willfulness where applicable.
122. These receipts will be attached as **Exhibit E-2**.

## H. $0 Balance Due dated 05/15/2025

123. Plaintiff possesses screenshots from CPS's online portal showing a **$0.00 balance** due on the account.

124. This document appears inconsistent with CPS's later assertion that Plaintiff owed more than $20,000 and is relevant to Plaintiff's claims regarding account balances, debt reporting, and account servicing practices.

125. These document will be attached as **Exhibit C**.

## I. Defective Notice of Intent to Sell (Obtained from CFPB Portal)

126. CPS uploaded a **Notice of Intent to Sell** to the CFPB portal that stated the vehicle would be sold **"on or after"** a date, without providing the required time, location, and method of redemption.

127. Plaintiff contends that this Notice did not contain the information required by N.C. Gen. Stat. § 25-9-614, including the time, location, and method for redeeming the vehicle.

128. This Notice will be attached as **Exhibit G**.

## J. February 16, 2026 Letter — Refusal to Issue 1099-C

129. Plaintiff received a letter dated **February 16, 2026**, in which CPS refused to issue a **Form 1099-C** despite having charged off the account and sold the debt.

130. Plaintiff contends that this letter is relevant to her claims concerning the account's charge-off status, debt sale, and account reporting practices.

131. This letter will be attached as **Exhibit H**.

## K. Eviction Docket and Hotel/Rental Receipts

132. Plaintiff possesses court dockets reflecting eviction proceedings that occurred after the loss of transportation and employment alleged in this Complaint.

133. Plaintiff also possesses receipts for three weeks of hotel expenses at the Residence Inn.

134. These documents will be attached as **Exhibit D**.

## L. Debt Buyer Contradictions

135. Southern Financial Capital Group, LLC and Stradford Group & Associates reported or asserted differing balances for the same debt ($19,865.14 versus $21,179.88)..

136. Plaintiff contends that these inconsistent balances are relevant to her claims concerning debt collection, account reporting, and the accuracy of information furnished regarding the account.

137. These documents will be attached as **Exhibit F**.

# IX. CAUSES OF ACTION

## COUNT I — BREACH OF THE PEACE

### Against Defendants CPS, ARS/PK Willis, and NC Recovery Services (Under N.C. Gen. Stat. § 25-9-609)

138. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.
139. Under N.C. Gen. Stat. § 25-9-609, a secured party may repossess collateral **only if it proceeds without breach of the peace.**
140. On May 13, 2025, Plaintiff was physically present and **verbally objected** to the repossession.
141. Despite Plaintiff's objections, NC Recovery continued the repossession, creating a disturbance.
142. PK Willis acknowledged that interactions occurred between the repossession agents and Plaintiff during the repossession.
143. Any repossession conducted over a debtor's objection or involving a disturbance constitutes a **breach of the peace**.
144. Plaintiff contends that the conduct described above constituted a breach of the peace under N.C. Gen. Stat. § 25-9-609.
145. Plaintiff suffered property loss, emotional distress, and consequential damages as a direct result.

## COUNT II — CONVERSION

### Against ARS/PK Willis and NC Recovery Services

146. Plaintiff realleges all preceding paragraphs.
147. During the repossession, NC Recovery Services agents exercised control over Plaintiff's personal property without Plaintiff's consent.
148. Defendants **mixed Plaintiff's belongings with rocks and gasoline,** destroying over $7,200 in property.
149. Defendants exercised dominion and control over Plaintiff's property without Plaintiff's consent.
150. Plaintiff suffered financial loss and emotional distress as a result.

## COUNT III — TRESPASS TO LAND

### Against ARS/PK Willis and NC Recovery Services

151. Plaintiff realleges all preceding paragraphs.

152. Agents acting on behalf of ARS/PK Willis and NC Recovery Services entered Plaintiff's property in connection with the repossession.
153. Plaintiff ordered Defendants to leave, but they refused.
154. Plaintiff contends that Defendants' continued presence on the property after being directed to leave constituted trespass.

# COUNT IV — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

## Against ARS/PK Willis and NC Recovery Services

155. Plaintiff realleges all preceding paragraphs.
156. Plaintiff contends that Defendants' conduct—including refusing to leave the property, continuing the repossession over Plaintiff's objections, and damaging personal property—was extreme and outrageous.
157. Defendants acted intentionally or with reckless disregard for Plaintiff's emotional well-being.
158. Plaintiff suffered severe emotional distress, including anxiety, fear, and trauma.

# COUNT V — VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

## Against ARS/PK Willis, NC Recovery Services, Southern Financial Capital Group, and Stradford Group (15 U.S.C. § 1692 et seq.)

159. Plaintiff realleges all preceding paragraphs.
160. Plaintiff alleges that ARS/PK Willis, NC Recovery Services, Southern Financial Capital Group, LLC, and Stradford Group & Associates acted as debt collectors within the meaning of 15 U.S.C. § 1692a(6).
161. Defendants violated the FDCPA by:

- Continuing collection during an active dispute (§ 1692g(b));
- Reporting false balances (§ 1692e);
- Using unfair and unconscionable means (§ 1692f);
- Repossessing without a present right to possession (§ 1692f(6));
- Failing to validate the debt (§ 1692g(a)).

162. Plaintiff suffered financial, emotional, and reputational harm.

# COUNT VI — VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA)

## Against CPS, Prancer, Southern Financial Ca, and Stradford Group (15 U.S.C. § 1681 et seq.)

163. Plaintiff realleges all preceding paragraphs.
164. Defendants furnished inaccurate information to credit reporting agencies, including:

- Conflicting balances ($19,865.14 vs. $21,179.88);
- False repossession date (May 14 instead of May 13);
- Reporting a debt that had been charged off and re-charged off;
- Reporting Plaintiff as delinquent after issuing a $0 balance.

165. Plaintiff disputes the adequacy and reasonableness of the investigations conducted after multiple disputes were submitted through consumer reporting agencies and directly to the furnishers.
166. Plaintiff contends that these actions violated the Fair Credit Reporting Act, including 15 U.S.C. §§ 1681s-2(a) and 1681s-2(b), to the extent applicable.

# COUNT VII — VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT (ECOA)

## Against Prancer Capital Corp. (15 U.S.C. § 1691(d))

167. Plaintiff realleges all preceding paragraphs.
168. Prancer denied Plaintiff's credit application.
169. Prancer admitted in a recorded call: **"We don't give out denial paperwork."**
170. ECOA generally requires creditors to provide written adverse action notices following a credit denial.
171. Plaintiff contends that Prancer failed to provide the written adverse action notice required by 15 U.S.C. § 1691(d).

# COUNT VIII — VIOLATION OF THE TRUTH IN LENDING ACT (TILA)

## Against Platinum Pre-Owned LLC (15 U.S.C. § 1601 et seq.)

172. Plaintiff realleges all preceding paragraphs.
173. Platinum charged a **$34.00 notary fee** despite no notary stamp or signature.

174. Plaintiff contends that the transaction documents do not reflect a completed notarial act despite the assessment of a $34.00 notary fee.
175. Plaintiff contends that the notary and messenger charges were not adequately disclosed or supported by the transaction documents.
176. Plaintiff was charged approximately $1,000 for GAP coverage despite disputing that Plaintiff signed or authorized the GAP agreement.
177. Plaintiff contends that these charges caused the disclosed Finance Charge and APR to be inaccurate.
178. Plaintiff contends that the resulting disclosure inaccuracies exceeded the tolerance permitted under Regulation Z.

# COUNT IX — UCC ARTICLE 9 VIOLATIONS

**Against CPS** (N.C. Gen. Stat. §§ 25-9-610, 25-9-614, 25-9-625)

179. Plaintiff realleges all preceding paragraphs.
180. CPS issued a Notice of Intent to Sell stating that the vehicle would be sold "on or after" a specified date.
181. The Notice failed to provide:

- Time of sale;
- Location of sale;
- Redemption instructions.

182. Plaintiff contends that the disposition of the vehicle was not commercially reasonable under N.C. Gen. Stat. § 25-9-610.
183. Plaintiff seeks the statutory remedies available under N.C. Gen. Stat. § 25-9-625, including any damages authorized by law.
184.

# COUNT X — UNFAIR AND DECEPTIVE TRADE PRACTICES (UDTPA)

**Against CPS, Platinum, Prancer, ARS, NC Recovery, and ERIE** (N.C. Gen. Stat. § 75-1.1)

185. Plaintiff realleges all preceding paragraphs.
186. Defendants engaged in unfair, deceptive, and unethical conduct, including:

- Yo-yo financing;
- Insurance steering;
- Signatures and contract add-ons that Plaintiff disputes as unauthorized;

- Phantom fees;
- False credit reporting;
- Breach of peace;
- Destruction of property;
- Contradictory statements to regulators;
- Failure to respond to disputes;
- Deceptive accounting;
- Re-charge off and debt sale practices;
- Selling debt during active dispute.

187.     Defendants' conduct was willful and malicious.

188.     Plaintiff is entitled to **treble damages** under N.C. Gen. Stat. § 75-16.

# COUNT XI — PENNSYLVANIA UTPCPL VIOLATIONS

## Against Platinum Pre-Owned LLC

189.     Plaintiff realleges all preceding paragraphs.

190.     Platinum Pre-Owned failed to provide required disclosures under Pennsylvania law..

191.     Platinum engaged in deceptive practices, including:

- Misrepresenting financing approval;
- Failing to provide odometer disclosures;
- Failure to honor IOU
- Failing to provide Buyers Guide;
- GAP insurance documentation containing a signature Plaintiff disputes as authentic;
- Charging phantom fees.

192.     Plaintiff relied on these misrepresentations to her detriment.

# COUNT XII — INSURANCE BAD FAITH

## Against ERIE Insurance Company

193.     Plaintiff realleges all preceding paragraphs.

194.     ERIE allowed the dealership to list Prancer as lienholder.

195.     Plaintiff contends that ERIE backdated policy documents and improperly maintained Prancer as a lienholder on policy records.

196.     Plaintiff contends that ERIE's conduct contributed to the damages alleged in this Complaint and breached duties owed to Plaintiff under applicable insurance law.

# COUNT XIII — NEGLIGENCE & NEGLIGENT MISREPRESENTATION

## Against All Defendants

197.    Plaintiff realleges all preceding paragraphs.
198.    Defendants owed Plaintiff a duty of care.
199.    Defendants breached that duty through alleged misrepresentations, omissions, and other conduct described in this Complaint.
200.    Plaintiff suffered foreseeable harm as a result.

**Certification and Closing** Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 7/31/2026

Signature of Plaintiff: _____

Printed Name of Plaintiff: Pamela Denise Johnson_____