UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

FILED

AUG 07 2026

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ____ DEP CLK

---

**PAMELA DENISE JOHNSON,**
Plaintiff,

v.

**CONSUMER PORTFOLIO SERVICES INC.,**

**PLATINUM PRE-OWNED LLC / MICHEAL J. DORAZIO,**

**PRANCER CAPITAL CORP.,**

**AMERICAN RECOVERY SERVICES,**

**NC RECOVERY SERVICES, INC. - THOMAS G. SMITH,**

**ERIE INSURANCE COMPANY,**
Defendants.

**Case No.: 5:26-CV-00320-D-RN**

**PLAINTIFF'S MOTION TO CORRECT THE RECORD AND DOCKET DISCREPANCIES**

## MOTION TO CORRECT THE RECORD AND DOCKET DISCREPANCIES

Plaintiff, appearing *pro se*, respectfully moves this Honorable Court to correct critical docketing errors, scanning inversions, and supervisor-directed file fragmentations

regarding the filings indexed as Document 14, Document 14-1, and Document 15. In support of this motion, Plaintiff states as follows:

**I. Procedural History of Pristine Initial Filing**

On May 13, 2026, Plaintiff filed her initial Civil Complaint along with an Application to Proceed In Forma Pauperis (IFP). This initial May 13 submission was prepared to an exceptionally high standard—it was clean, neat, professional, and factually accurate, containing no formatting disruptions, structural flow issues, or material spelling errors. As explicitly reflected in the initial docket entry on May 14, 2026, the Clerk's Office properly indexed and recognized Plaintiff's structured filing, listing the primary Complaint alongside its accompanying components.

Critically, while the Court officially signed the order approving Plaintiff's IFP application on June 25, 2026, Plaintiff did not receive physical custody or notification of that order until July 10, 2026, due to institutional mailing intervals to her PO Box at the postal annex. Plaintiff maintains verifiable mailing and receipt documentation proving this July 10 retrieval date. Plaintiff acted immediately upon obtaining the order to advance her case.

**II. Reliance on Clerk Instructions and Subsequent Inversion Error**

On Thursday, July 30, 2026, Plaintiff visited the Clerk's Office window to file an amendment. Front counter staff explicitly instructed Plaintiff that because the court's standard interactive PDF form fields are digitally locked and un-editable under the "Eastern Division" header, Plaintiff should place her formal amendment tracking boxes on the attached sheets because "it is all treated as one single document."

Relying entirely on the clerk's directive, Plaintiff returned on Friday, July 31, 2026, and submitted her First Amended Complaint. Plaintiff utilized two separate tracking notation boxes on the attached submission to clarify the distinct legal and factual parameters of the amendment, typing the exact operative text as follows:

- **Box 1 Notification:** *"Plaintiff files this first amended complaint to correct defendant identification clarify factual allegations and add factual allegations concern in credit reporting dispute re-investigation."*
- **Box 2 Notification:** *"Plaintiff further amends this complaint to correct the identification of defendant American recovery service plaintiff alleged that American recovery service is the intended defendant and updates the defendant information, service information and related allegations accordingly."*

Despite being submitted on July 31, 2026, court staff delayed processing the filing until August 3, 2026. Upon entry, the Clerk's Office completely inverted the filing order. The system treated the separate attachment (containing defendants explicitly numbered as five and six) as the primary document, while indexing the standard five-page court form (containing defendants one through four) as a secondary attachment (Document 14-1). Critically, the standard five-page form (Document 14-1) already contained the fully updated and corrected name for **American Recovery Services** within the primary defendant lines.

However, because Plaintiff followed prior counter instructions and placed the two notice text blocks on the attachment where there was physical room to type, court staff determined that only the attachment constituted the amended complaint. By bypassing the primary five-page form and scanning it as a secondary attachment, the CM/ECF system automatically and erroneously marked the first four primary defendants (including Consumer Portfolio Services and the Dealership) as **TERMINATED**.

**III. Counter Alterations, Rejection of Clean Paperwork, and Coerced Markups**

On Thursday, August 6, 2026, Plaintiff appeared in person to resolve this error. Case Manager Amber refused Plaintiff's request to speak directly with an active supervisor. Rather than executing an administrative override to reinstate the wrongfully terminated parties, Case Manager Amber—acting under the explicit authorization of Supervisor Susan—vouched for the data entry error and presented Plaintiff with an explicit counter ultimatum: *"Do you want to fix this or not because you're still within your window?"*

Plaintiff proactively downloaded the incorrect file from PACER to clearly demonstrate the court's scanning error to staff, and she explicitly offered a fresh, immaculate clean copy of her paperwork to replace it. Case Manager Amber rejected Plaintiff's clean copy, explicitly instructing Plaintiff that she must use the incorrect PACER printout sheet instead. Staff then provided courthouse correction fluid and a pen, ordering Plaintiff to physically handwrite mandatory tracking directives directly across the corrupted printout: forcing Plaintiff to write *"see attachment"* and the cross-reference sentence *"Additional parties 5 & 6 listed on an additional page labeled additional parties"* right underneath defendant number four on the front form, while simultaneously forcing her to write the label *"Additional Parties"* directly onto the attachment page of the 1 through 23 packet right above defendants five and six. Staff then ordered Plaintiff to white-out a portion of her signature verification block to execute a split-date entry (dated August 6 on pages 1–5 over a July 31 backing text). This coerced modification forced Plaintiff to physically clutter an incorrect printout at the counter to satisfy arbitrary tracking demands that make the submission look entirely disorganized to the presiding Judge.

Because Case Manager Amber was on a phone call, the counter clerk scanned and emailed these marked-up pages directly to Amber's workstation. Case Manager Amber reviewed the electronic image, cleared it, and ordered the clerk to give Plaintiff an "all set to go" directive. This modification resulted in a visually disjointed document containing informal overwrites that court staff immediately fragmented on PACER, compromising Plaintiff's professional presentation to mask a series of processing mistakes.

A review of PACER reveals that the Clerk's Office has completely fragmented this submission under Document 15:

- The main entry (**Document 15**) is logged as a standalone 5-page document dated August 6.
- The body allegations have been severed as **Attachment 1**, labeled "Second amended complaint," consisting of 23 pages dated July 31, totaling 28 pages.

By continuously breaking Plaintiff's single physical filings into separate main entries and attachments, the electronic docket remains broken. The core text is trapped as a sub-attachment, the first four primary defendants remain wrongfully listed as "Terminated," and the entire consumer protection action has been administratively misclassified under the narrow code for a standard Fair Credit dispute under an incorrectly designated Diversity jurisdiction setting. This completely obscures Plaintiff's core claims for Breach of the Peace (UCC § 9-619 / N.C.G.S. § 25-9-619), Insurance Fraud, ECOA Violations, TILA Violations, and Property Damage.

**IV. Relief Sought**

A court's electronic docket must be a literal reflection of a pro se litigant's physical submissions. Court staff and supervisors lack the legal authority to route files through informal channels, reject clean and pristine paperwork, weaponize incorrect case printouts, strip operating names from party indexes, mandate handwritten cross-reference captions on completed attachments, leverage automatic amendment windows as ultimatums to hide mistakes, supply tools to mandate handwriting on un-editable forms, coerce split-date filings containing counter overwrites, narrow substantive claims, change jurisdiction selections, or administratively terminate primary defendants who have already been served.

WHEREFORE, Plaintiff Pamela Denise Johnson respectfully requests that this Court:

1. **ORDER** an immediate administrative audit and consolidation of the electronic docket entries for Document 14, 14-1, and 15 to accurately reflect a single, unified lawsuit.
2. **REINSTATE** the first four primary defendants—specifically including Consumer Portfolio Services Inc. and Platinum Pre-Owned LLC—who were erroneously terminated due to scanning and data entry errors.
3. **RESTORE** the original, broad Federal Question legal classifications and multi-count causes of action in this lawsuit, ensuring American Recovery Services maintains its proper operational designation, and removing the restrictive "Fair Credit dispute" designation and the incorrect "Diversity" jurisdiction assignment.

4. **GRANT** Plaintiff leave to file a single, fully unified Second Amended Complaint within 14 days, compiling the standard form and all 23 pages of allegations into one continuous electronic file to ensure it cannot be fragmented by scanning staff again.

Dated: August 7, 2026

Respectfully submitted,

Pamela Denise Johnson, *Pro Se*