IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 5:26-CV-320-D-RN

| | |
|---|---|
| PAMELA DENISE JOHNSON,<br><br>Plaintiff<br><br>v.<br><br>CONSUMER PORTFOLIO SERVICES, INC.; PLATINUM PRE-OWNED, LLC; PRANCER CAPITAL CORP.; AMERICAN RECOVERY SERVICES; ERIE INSURANCE COMPANY; NC RECOVERY SERVICES, INC., AMERICAN RECOVERY SERVICES, INC.,<br><br>Defendants. | **DEFENDANT PLATINUM PRE-OWNED, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** |

Defendant Platinum Pre-Owned, LLC ("Platinum") submits the following Memorandum of Law in support of its Motion to Dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Plaintiff sued several defendants relating to a used car she purchased in Pennsylvania over four years ago.

Platinum is a used car dealership in Pennsylvania. Platinum sold Plaintiff a 2021 Mitsubishi Outlander in January 2022 from its Carlisle, Pennsylvania location. Plaintiff alleges that, at the time of the sale, Platinum (1) charged her for services that she did not authorize or receive, (2) did not provide her with certain required disclosures, (3) "coerced" Plaintiff to use a specific insurer for the vehicle, and (4) failed to accurately disclose the finance charge and annual percentage rate for the sale. The sale documents for the purchase (each of which includes

Plaintiff's signature) accurately reflect all of the charges that Plaintiff authorized for the transaction and show that Platinum provided her with the appropriate disclosures.

Platinum moves to dismiss Plaintiff's Second Amended Complaint against it for three reasons. First, this Court lacks personal jurisdiction over Platinum. Courts in North Carolina cannot constitutionally exercise personal jurisdiction over a Pennsylvania car dealership for claims based solely on its conduct in Pennsylvania. Second, Plaintiff's claims against Platinum are time-barred under their applicable limitations periods. Third, the Second Amended Complaint fails to state a claim against Platinum for which relief can be granted because the claims are contradicted by the contract documents and not plausibly alleged.

## STATEMENT OF FACTS RELEVANT TO MOTION

### A. Platinum Pre-Owned, LLC

Platinum is a used car dealership in Pennsylvania. **Exhibit 1** (Affidavit of Jen Dorazio), p 1, ¶ 3. It has two locations: one in Carlisle, Pennsylvania and one in Mechanicsburg, Pennsylvania. Ex. 1, p 1, ¶ 4. Platinum does not have any locations in North Carolina and does not do business in North Carolina. Ex. 1, p 1, ¶¶ 4-5. All of Platinum's employees are located in Pennsylvania. Ex. 1, p 1, ¶ 6. The sale at issue in this case occurred at Platinum's Carlisle, Pennsylvania location. Ex. 1, pp 1-2, ¶ 7.

### B. Plaintiff's Vehicle Purchase and the Contract Documents

Plaintiff purchased a 2021 Mitsubishi Outlander from Platinum on January 8, 2022.[1] The Vehicle Buyer's Order for this sale is attached to this brief as **Exhibit 2**. The Retail Installment Sale Contract is attached as **Exhibit 3.** Platinum's address in the contract documents is its Carlisle,

[1] Plaintiff alleges she purchased the vehicle in 2021, but the sales documents reflect that the sale occurred on January 8, 2022. Compare DE 15-1 (Second Amended Compl.), p 6, ¶ 1 with Exs. 2 (Buyer's Order), 3 (Retail Installment Sale Contract). This brief will use the later date because it is the date reflected in the signed contracts and is more favorable to Plaintiff on the limitations analysis below.

Pennsylvania location. Ex. 3, p 1. Plaintiff also listed a Carlisle, Pennsylvania address as her own address for the sale. Ex. 2, p 1; Ex. 3, p 1. The vehicle was registered to Plaintiff at her Carlisle, Pennsylvania address as part of the transaction. **Exhibit 4** (Copy of Notarized Title), p 2.

As the contract documents reflect, the total cash price of the vehicle was $29,900.00. Ex. 2, p 1; Ex. 3, p 2. The transaction also included sales tax in the amount of $1,794.00 and certain fees totaling $1,463.00. Ex. 2, p 1; Ex. 3, p 2. Plaintiff was charged and agreed to pay the following fees, disclosed in the tables below from the Buyer's Order and Retail Installment Sale Contract. See Ex. 2, p 1; Ex. 3, p 2.

| **Description of Fee** | **Amount** | **Cite to Exhibit** |
|---|---|---|
| GAP Insurance | $1,000.00 | Ex. 2, p 1; Ex. 3, p 2 ("Optional Gap Contract"); Ex. 5 (GAP Addendum) |
| Documentary Fee | $299.00 | Ex. 2, p 1; Ex. 3, p 2 |
| Temporary Registration Plate Fee[2] | $34.00 | Ex. 2, p 1; Ex. 3, p 2 |
| Registration, Title, and Encumbrance/Recording Fees[3] | $130.00 | Ex. 2, p 1; Ex. 3, p 2 |
| **Total fees** | **$1463.00** | |

A detailed breakdown of the fees and down-payment that Plaintiff agreed to pay for the vehicle appears on the next page.

[2] The fee is described in the Retail Installment Sale Contract as a "Notary/Messenger Fee." Ex. 3, p 2.

[3] The registration, title, and encumbrance fees are described as "LICENSE AND/OR REG FEES" and "Government Certificate of Title Fees" in the Retail Installment Sale Contract, but the totals for both categories add up to the same amount, which is $130.00. Compare Ex. 2, p 1 with Ex. 3, p 2.

| | | |
|---|---|---|
| PRICE OF VEHICLE | | 29,900.00 |
| SELLER ACCESSORIES | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| Cash Price of Vehicle & Accessories | | 29,900.00 |
| N/A | | N/A |
| N/A | | N/A |
| Sales Tax | | 1,794.00 |
| P.T.A. Fee ($1.00 PER TIRE) | | N/A |
| County Fee | | 5.00 |
| REGISTRATION 39.00 · TITLE 58.00 · TRANSFER N/A · ENCUMBRANCE 28.00 | | 125.00 |
| Temporary Registration Plate Fee | | 34.00 |
| Documentary Fee | | 299.00 |
| Notary Fee | | N/A |
| On-Line Registration Fee | | N/A |
| Messenger Fee | | N/A |
| N/A | | N/A |
| OTHER CHARGES: GAP | | 1,000.00 |
| OTHER CHARGES: N/A | | N/A |
| **Total Price** | | 33,157.00 |
| TOTAL CREDIT: Trade-In | N/A | |
| *Payoff Amount Is Subject To Verification — Less Payoff * | N/A | |
| Net Trade In | N/A | |
| N/A Deposit | N/A | |
| Cash on Delivery | 3,000.00 | |
| Net Trade + Deposit + Cash on Delivery = **Total Down Payment** | | 3,000.00 |
| **Unpaid Balance of Total Price** | | 30,157.00 |

Plaintiff signed each page of the contract documents disclosing these fees. Exs. 2, 3.

Both the Buyer's Order and Installment Contract also incorporated by reference the "Buyer's Guide" that is required by the Federal Trade Commission's Used Motor Vehicle Trade Regulation Rule, codified at 16 C.F.R. §§ 455.1 through 455.5. Specifically, the Buyer's Order states that the Used Car Buyer's Guide is "PART OF THE CONTRACT" and "OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE." Ex. 2, p 1. A copy of the

Buyer's Guide applicable to this vehicle that Plaintiff signed as part of the contract documents is attached to this brief as **Exhibit 5**.

The Buyer's Order and Title that Plaintiff signed also disclose the mileage on the vehicle at the time of the sale, which was 15,132. Ex. 2, p 1; Ex. 4, p 2.

In connection with her vehicle purchase, Plaintiff had the option to purchase GAP insurance and certain credit insurance. Ex. 3, p 2. Plaintiff elected to purchase GAP insurance but not credit insurance. Id. Plaintiff signed a GAP addendum purchasing optional GAP insurance for $1,000. **Exhibit 6** (GAP Addendum). She signed the GAP addendum on the same day as she signed the other contract documents. See id. By signing, she acknowledged that "This GAP Addendum is optional and will not be provided unless You sign below and pay the charges as shown above." Id. The GAP addendum also notified her that the GAP coverage she purchased does not provide "physical damage coverage nor eliminate [her] obligation to insure [the] vehicle under applicable state law" and advised her "to consult an insurance agent to determine whether similar coverage may be obtained and at what cost." Id.

The contract documents that Plaintiff signed required Plaintiff to insure the vehicle against loss or physical damage. Ex. 3, p 3, ¶ d. Under the contract documents, Plaintiff was notified that she was not required to buy insurance from any one specific insurer and that she could have the insurance coverage provided by an insurer that she already has a policy with for another vehicle. Ex. 3, p 2. Plaintiff also signed another separate agreement to provide insurance covering the vehicle, also signed on January 8, 2022. **Exhibit 7** (Agreement to Provide Insurance). Under this separate agreement to provide insurance, she acknowledged the following:

> I understand that to provide protection from serious financial loss, should an accident occur, my installment contract requires the vehicle to be continuously covered with insurance against the risks of fire, theft and collision. Accordingly, I

> have arranged for the required insurance through the insurance company shown below . . . .

Id. The insurer for the vehicle is Erie Insurance Company. Id. As Exhibit 7 shows, the insurance was obtained through an insurance agent, Billow Insurance Agency, in Halifax, Pennsylvania. Id.

C. Plaintiff's Allegations Against Platinum

Plaintiff filed this lawsuit against Platinum and several other defendants, including defendants who were involved in credit reporting and vehicle repossession activities unrelated to Platinum's conduct.[4]

1. *Personal Jurisdiction Allegations*

Regarding personal jurisdiction, Plaintiff alleges generally, without any specific supporting factual allegations, that all defendants "purposefully directed business activities toward North Carolina residents" and "caused injury to Plaintiff within North Carolina." [DE 15-1, p 3, § D] Specifically as to Platinum, Plaintiff alleges that Platinum "engaged in financing, credit reporting, and insurance-related conduct that caused harm in North Carolina." [DE 15-1, p 3, § D] Plaintiff does not allege that any of Platinum's conduct alleged in her lawsuit occurred in North Carolina or was purposefully directed to North Carolina. [See id.] In fact, she admits that "the vehicle was purchased in Pennsylvania and remained registered in Pennsylvania throughout [her] ownership," that "the vehicle carried Pennsylvania tags and registration," "was insured through a Pennsylvania policy," and "underwent annual Pennsylvania inspection and emissions testing." [DE 15-1, p 4]

2. *Claims Against Platinum*

Plaintiff alleges that Platinum "engaged in a deceptive 'spot delivery' or 'yo-yo financing' scheme by allowing Plaintiff to take the vehicle home while falsely representing that financing

---

[4] The allegations described in this brief come from the Second Amended Complaint that Plaintiff filed on August 6, 2026.

had been approved." [DE 15-1, p 6, ¶ 2] She does not allege that the financing ultimately was not approved or that she was damaged in any way by her possession of the vehicle after the sale.

Plaintiff also alleges that Platinum failed to provide her with the required disclosures, including an odometer disclosure statement, the "the FTC Buyers Guide," a "Notice of Right to Rescind," a "written itemization of the amount financed," or a "written adverse action notice." [DE 15-1, p 6, ¶ 3] She claims that she should not have been charged a $34 "Notary/Messenger Fee" because she received no notarial services and that she did not authorized the $1,000 charge for GAP insurance. [DE 15-1, p 6, ¶¶ 4-5] She alleges that including these additional charges made her finance charge and APR (annual percentage rate) mathematically inaccurate in violation of the Truth in Lending Act. [DE 15-1, p 6, ¶ 6]

Plaintiff also alleges that Platinum "coerced" her to use Erie to insure the vehicle. [DE 15-1, p 6, ¶ 8] She does not allege any facts describing the alleged "coercion." Plaintiff does not allege that she did not receive the insurance coverage that she purchased or that any previous business dealings between Platinum and Erie had any effect whatsoever on her insurance or any related insurance claim.

Plaintiff attempts to allege claims against Platinum violating the Truth in Lending Act (Count VIII), Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1) (Count X), Pennsylvania UTPCPL (Unfair Trade Practices and Consumer Protection Law) (73 Pa. Stat. Ann. § 201-9.2) (Count XI), and negligence and negligent misrepresentation (Count XIII).

## ARGUMENT

### Standard of Review

The party asserting jurisdiction has the burden of showing that personal jurisdiction is proper "by a preponderance of evidence." E.g., Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir.

2016); accord Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). When reviewing a motion to dismiss for lack of personal jurisdiction, the Court may consider affidavits submitted by the parties. E.g., Grayson, 816 F.3d at 268; Combs, 886 F.2d at 676; Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 62 (4th Cir. 1993).

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia, 917 F.3d 206, 212 (4th Cir. 2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim has facial plausibility when the plaintiff pleads factual content that "allow[s] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678). "Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard." Id. (quoting Iqbal, 556 U.S. at 678).

The Court may consider a contract that is "integral to the complaint and authentic," when evaluating a 12(b)(6) motion to dismiss without converting the motion to a motion for summary judgment. E.g., Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007); Sahoo v. Gleaton, 2017 WL 1102623, at *1 n.3 (E.D.N.C. Mar. 23, 2017).

**I. The Court Lacks Personal Jurisdiction Over Platinum.**

Due Process under the United States Constitution requires that a defendant have sufficient ties to a forum before that forum's courts can exercise personal jurisdiction over the defendant. E.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980); International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945). Courts have recognized two types of personal jurisdiction: "general" jurisdiction and "specific" jurisdiction. E.g., Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty., 137 S. Ct. 1773, 1779 (2017); Goodyear Dunlop

Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). General jurisdiction over a defendant is only appropriate when the defendant's "affiliations with the [forum] State are so 'continuous and systematic' as to render them essentially at home" there. Goodyear, 564 U.S. at 919 (citing International Shoe, 326 U.S. at 317). "The 'paradigm' forums in which a corporate defendant is 'at home' are the corporation's place of incorporation and its principal place of business." BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017). The analysis for specific jurisdiction, however, "is very different." Bristol-Myers Squibb, 137 S. Ct. at 1780. Specific jurisdiction is only appropriate when "the suit" "aris[es] out of or relat[es] to the defendant's contacts with the forum." Id. (quoting Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)).

A. The Court Lacks General Jurisdiction Over Platinum.

Here, Plaintiff does not allege and could not allege sufficient facts to support general jurisdiction over Platinum. Plaintiff does not claim that Platinum is properly considered "at home" in North Carolina. Platinum is incorporated and headquartered in Pennsylvania, does not have any offices or employees in North Carolina, and does not do business in North Carolin. Ex. 1, p 2. As a result, Plaintiff could only show personal jurisdiction over Platinum through specific jurisdiction.

B. The Court Lacks Specific Jurisdiction Over Platinum.

"A federal district court may only exercise personal jurisdiction over a foreign corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009).[5] To analyze the constitutional question, the Fourth Circuit considers (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the

[5] Plaintiff does not point to a provision in North Carolina's long-arm statute that would support jurisdiction here. Even if they did, the statute cannot be construed to allow jurisdiction where the constitution would forbid it.

plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Id. (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir.2002)). The "second prong" of this test "requires that the defendant's contacts with the forum state form the basis of the suit." Id. at 278-79 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)); see Bristol-Myers Squibb, 137 S. Ct. at 1780. "[T]he plaintiff cannot be the only link between the defendant and the forum." Walden v. Fiore, 571 U.S. 277, 285 (2014). In other words, specific jurisdiction fails unless it is based on the defendant's contacts which make up "the very controversy that establishes jurisdiction." Bristol-Myers Squibb, 137 S. Ct. at 1780.

"When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." Id. at 1781 (citing Goodyear, 564 U.S. at 930 n.6). "[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." Goodyear, 564 U.S. at 930 n.6. "This is true even where the defendant is aware that its product would reach the forum state through the stream of commerce," Farrar v. McFarlane Aviation, Inc., 823 F. App'x 161, 164 (4th Cir. 2020) (citing Asahi Metal Indus. Co. Ltd. v. Superior Ct., 480 U.S. 102, 111 (1987)), "or where the defendant's products were sporadically sold in the forum state through intermediaries, id. (citing Goodyear, 564 U.S. at 926). For that reason, courts in the Fourth Circuit and across the country have dismissed cases for lack of personal jurisdiction when the complained-of conduct did not arise from the defendant's relevant contacts with the forum. E.g., Fidrych v. Marriott Int'l, Inc., 952 F.3d 124, 139 (4th Cir. 2020) (holding that South Carolina courts lacked personal jurisdiction over international hotel chain because the defendant had no contacts in South Carolina that were related

to the plaintiff's claim); Farrar v. McFarlane Aviation, Inc., 823 F. App'x 161, 164 (4th Cir. 2020) (holding that West Virginia courts lacked personal jurisdiction over non-resident defendants that lacked "control over the movement of the products that allegedly injured [the plaintiffs]").

In this case, exercising specific personal jurisdiction over Platinum would violate the Due Process clause. Plaintiff's allegations against Platinum only relate to Platinum's alleged conduct in Pennsylvania where Plaintiff purchased her vehicle. Platinum has no claim-specific contacts in North Carolina that could support personal jurisdiction here. As a result, the Court should dismiss the action as against Platinum under Rule 12(b)(2) for lack of personal jurisdiction.

**II. Plaintiff's Claims Against Platinum are Time-Barred.**

Plaintiff's claims based on federal law and North Carolina state law are time-barred based on the allegations of the Second Amended Complaint.

Claims under the Truth in Lending Act (TILA) may only be brought "within one year from the date of the occurrence of the violation," under the Act's plain language. 15 U.S.C. § 1640(e). Here, the conduct that Plaintiff complains of as a TILA violation allegedly occurred on January 8, 2022 when the contract documents were signed and the sale occurred. Plaintiff's original complaint in this action was filed on May 13, 2026—more than four years after the sale in 2022. [See DE 1]

Claims for negligence or negligent misrepresentation under North Carolina state law have a three-year limitations period. E.g., Barger v. McCoy Hillard & Parks, 122 N.C. App. 391, 393, 469 S.E.2d 593, 594 (1996) (citing N.C. Gen. Stat. § 1-52(5)), aff'd, 346 N.C. 650, 488 S.E.2d 215 (1997). The conduct Plaintiff alleges Platinum engaged in—charging allegedly-unauthorized fees, inaccurately listing the APR and finance charge, and allegedly failing to make certain disclosures—would have been apparent from the face of the contract documents that she signed in

January 2022. Plaintiff did not file this complaint until more than three years after the sale, and the negligence-based claims against Platinum are therefore time-barred by N.C. Gen. Stat. § 1-52(5).[6]

Claims under North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA) have a four-year limitations period that runs from the claim accrual. N.C. Gen. Stat. § 75-16.2. Here, the conduct that Plaintiff alleges supports her UDTPA claim against Platinum occurred at the time of the sale in January 2022.[7] As a result, this claim is also time-barred.

## III. Plaintiff's Second Amended Complaint Fails to State a Claim Against Platinum.

Plaintiff's allegations against Platinum also fail to state a claim and should be dismissed under Rule 12(b)(6) for the various reasons described below.

### A. The Contract Documents Contradict Plaintiff's Allegations.

First and most basically, the written contract documents that Plaintiff signed show that her claims against Platinum have no merit. The Court can consider these contract documents in a 12(b)(6) motion because the contract documents are "integral to the complaint and authentic." Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007). The contract documents are the exact documents that Plaintiff claims violate the various laws she cites in her pleadings.

As summarized in the table below, the contract documents refute Plaintiff's allegations.

---

6 To the extent that Pennsylvania law applies to these tort claims based on the fact that the alleged disclosures or non-disclosures occurred in Pennsylvania, these claims would also be time-barred under Pennsylvania's two-year limitations period for negligence-based claims. See 42 Pa. C.S. § 5524(7).

7 There are other allegations in Plaintiff's UDTPA claim (Count X) which appear to relate to the conduct allegedly committed by other defendants that is not specifically alleged against Platinum, including, for example, "False credit reporting," "Breach of peace," "Destruction of property," "Contradictory statements to regulators," "Failure to respond to disputes," "Deceptive accounting," "Re-charge off and debt sale practices," and "Selling debt during active dispute." Plaintiff does not allege anywhere in the Second Amended Complaint that Platinum specifically engaged in that post-sale conduct.

| **Plaintiff's Allegation** | **Exhibit Cite** |
|---|---|
| Plaintiff claims she did not receive an odometer disclosure. [DE 15-1, p 6, ¶ 3] | She was. Ex. 2, p 1; Ex. 4, p 2. |
| Plaintiff claims she did not receive the FTC Buyers Guide. [DE 15-1, p 6, ¶ 3] | She was. Ex. 6. |
| Plaintiff claims she did not receive a Notice of Right to Rescind. [DE 15-1, p 6, ¶ 3] | This notice is not legally required when the sale is not a home solicitation and does not grant a security interest in the consumer's principal dwelling. See 15 U.S.C. § 1635(a); 12 C.F.R. § 1026.23(a)(1); 16 C.F.R. § 429.1. Platinum accurately disclosed that there is no applicable "'cooling off' or cancellation period for this sale." Ex. 3, p 5. |
| Plaintiff claims she did not receive a written itemization of the amount financed. [DE 15-1, p 6, ¶ 3] | She was. Ex. 2, p 1; Ex. 3, p 2. |
| Plaintiff claims did not receive a written adverse action notice. [DE 15-1, p 6, ¶ 3] | Plaintiff does not allege that Platinum took any "adverse action" against her related to her credit, and she could not plausibly allege that because the Retail Installment Sales Contract shows the contract was assigned without recourse to (Consumer Portfolio Services) on the day of the sale. Ex. 3, p 5. |
| Plaintiff claims that she did not authorize a $34 notary/messenger fee. [DE 15-1, p 6, ¶ 4] | Plaintiff signed the contract documents which specifically authorized this fee. Ex. 2, p 1; Ex. 3, p 2. Also, the title to the vehicle is notarized and dated January 8, 2022. Ex. 4, p 2. |
| Plaintiff claims that she did not "sign for" GAP insurance. [DE 15-1, p 6, ¶ 5] | She did. Ex. 2, p 1; Ex. 3, p 2; Ex. 5. |
| Plaintiff contends that the finance charge and APR were mathematically inaccurate. [DE 15-1, p 6, ¶ 6] | They are not. See § III.B, infra. |

Plaintiff fails to state a claim as to the matters she alleges that are contradicted by the same contract documents that she relies on for her claims.

B. Plaintiff Fails to State a Claim Under TILA.

Plaintiff attempts to allege a TILA claim based on allegedly unauthorized charges or "phantom fees" and based on an inaccurate disclosure of the finance charge and APR. Both of these theories fail on their face based on the contract documents.

First, as described above, the fees that Plaintiff complains about were separately itemized and disclosed in the contract documents that she signed. See § III.A, supra.

Second, both the finance charge and annual percentage rate were accurately calculated within the permitted tolerance under TILA's "Regulation Z" and were disclosed in the contract documents that Plaintiff signed. The finance charge ($17,870.60) accurately reflects the difference between the amount financed ($30,157.00) and the total payments over the lifetime of the loan ($48,027.60). Ex. 3, p 1; 12 C.F.R. § 1026.18(b). $48,027.60 - $30,157.00 = $17.870.60. Also, the disclosed APR of 16.5% falls within (0.125%) tolerance allowed under the applicable regulation, 12 C.F.R. § 1026.22(a). Below are the results from the APR calculation tool provided by the Federal Financial Institutions Examination Council[8] using the figures from the contract documents:

**Disclosure Information - Output**

**Amount Financed**
$30,157.00
**Finance Charge**
$17,870.60
**Total of Payments**
$48,027.60
**Annual Percentage Rate**
16.518%
**Loan Regularity**
Regular

**Loan Information - Original Input**

**Amount Financed**
$30,157.00
**Disclosed (estimated) APR**
16.500%
**Disclosed Finance Charge**
$17,870.60
**Disclosed Total Of Payments**
$48,027.60
**Loan Secured by Real Estate or Dwelling**
No
**Payment Frequency**
Monthly (Installment Loan)
**Loan Subject to TRID**
No

**Payment Frequency**

| Payment Stream | Payment Amount | Number of Payments | Whole Unit Periods | Odd Days |
|---|---|---|---|---|
| 1 | $667.05 | 72 | 1 | 14 |

8 https://www.ffiec.gov/resources/computational-tools/apr

Because the APR disclosed falls within the tolerance of 0.125%, the APR is not "mathematically inaccurate" as Plaintiff alleges and in fact complies with the applicable TILA rules.

### C. Plaintiff Fails to State a Claim Under North Carolina's UDTPA or Pennsylvania's UTPCPL.

Plaintiff's claims based on the UDTPA fail on their face. First, Plaintiff engages in shotgun pleading for her UDTPA claim which violates Rule 8(a) and warrants dismissal. Second, Plaintiff's allegations fail to comply with Rule 9(b) because they fail to allege the allegedly unfair or deceptive conduct with specificity. Third, Plaintiff fails to allege facts supporting the elements of a claim under the UDTPA or UTPCPL and fails to cite any authority showing that the conduct that she specifically alleges against Platinum is unfair or deceptive in violation of North Carolina or Pennsylvania law.

#### 1. *Plaintiff's UDTPA Claim is a "Shotgun Pleading."*

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff's Complaint in general is neither short nor plain, and her UDTPA claim specifically it is not coherent enough to put a reasonable defendant on notice of what alleged conduct purportedly supports claims against each defendant. Courts have termed similar complaints "shotgun pleadings." "A shotgun pleading is one that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading or one in which it is virtually impossible to know which allegations of act are intended to support which claim for relief." Henderson v. Wells Fargo, N.A., 2024 WL 1376487, at *8 (E.D.N.C. Mar. 29, 2024) (quoting Wilkinson v. Wells Fargo Bank, N.A., 2020 WL 2542867, at *3 (W.D.N.C. May 18, 2020)). "Pro se complaints with shotgun pleading warrant dismissal." Id. This Court has dismissed an action based on improper "shotgun pleading" even where the plaintiff was represented by counsel when the only allegations against the moving

defendant were "conclusory and insufficient to state plausible claims." IOU Cent., Inc. v. Ladd, 2023 WL 3267710, at *2 (E.D.N.C. Mar. 6, 2023). Here, Plaintiff alleges a broad, scattershot UDTPA claim against six defendants without even attempting to allege which defendant engaged in which alleged conduct which is impermissible "shotgun" pleading.

2. *Plaintiff's Complaint Fails to Comply with Rule 9(b).*

To the extent that Plaintiff's UDTPA or UTPCPL claims are based on allegedly false or deceptive representations, the Court should dismiss those claims based on Plaintiff's failure to comply with Rule 9(b)'s directive to allege those claims with specificity. E.g., Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F. Supp. 3d 722, 731 (M.D.N.C. 2015) (applying Rule 9(b) to UDTPA claims based on false or deceptive representations); accord MichJeff, LLC v. FCX Glob., Inc., 2025 WL 594979, at *11 (E.D.N.C. Feb. 24, 2025) (same). Under Rule 9(b), a plaintiff must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what they obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). Here, Plaintiff's Complaint alleges none of those things as to any alleged representations from Platinum.[9]

3. *Plaintiff Fails to Allege that Platinum Engaged in Conduct Actionable Under the UDTPA or UTPCPL.*

Plaintiff's UDTPA and UTPCPL claims are still deficient even when they incorporate the specific conduct that Plaintiff has specifically alleged elsewhere in the Complaint against Platinum. "In order to establish a prima facie claim for unfair trade practices [under the UDTPA], a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the

[9] To the extent that Plaintiff's allegation that she "disputes" the authenticity of her signature on the "GAP insurance documentation," is an attempt to allege that Platinum forged her signature on the contract documents, this, too, is a claim of intentional fraud that requires her to comply with Rule 9(b). See Harrison, 176 F.3d at 784.

plaintiff." SciGrip, Inc. v. Osae, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020) (quoting Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. A practice is deceptive if it has the capacity or tendency to deceive." MichJeff, LLC v. FCX Glob., Inc., 2025 WL 594979, at *12 (quoting Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71-72, 653 S.E.2d 393, 399 (2007)).

Under Pennsylvania's UTPCPL, relevant here, the plaintiff must allege facts showing that they "suffer[ed] any ascertainable loss of money or property," "as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of [the] act . . . ." 73 Pa. Stat. § 201-9.2. For UDTPA and UTPCPL claims based on deceptive conduct, both statutes require the plaintiff to show reasonable reliance on the defendant's allegedly deceptive conduct. E.g., Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 747 S.E.2d 220, 227-28 (2013); Seldon v. Home Loan Servs., Inc., 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009).

Here, Plaintiff fails to plausibly allege facts supporting required elements of UDTPA and UTPCPL. Plaintiff's "undisclosed-charges" allegations are refuted by the contract documents as described above. See § III.A, supra. Similarly, her allegation that Platinum "coerced" her to use Erie insurance is also contradicted by the contract documents. The Retail Installment Sale Contract notifies Plaintiff that she was not required to buy insurance from any one specific insurer and that she could have the physical damage insurance coverage provided by her existing insurer if she wanted. Ex. 3, p 2. Also, the Agreement to Provide Insurance that Plaintiff signed states that Plaintiff is the one who arranged the insurance and not Platinum. Ex. 7.

Moreover, Plaintiff does not allege she was specifically injured by the other conduct that forms the basis for her UDTPA or UTPCPL claims. Although Plaintiff makes a conclusory

allegation that Platinum engaged in "yo-yo financing" "by allowing Plaintiff to take the vehicle home while falsely representing that financing had been approved," [DE 15-1, p 6, ¶ 2], she does not allege facts showing that she was deceived or harmed by this alleged conduct. She does not allege that the financing ultimately was not approved or that she was damaged in any way by her possession of the vehicle after the sale. Also, while she claims, without specific factual support, that Platinum "coerced" her to use Erie to insure the vehicle, [DE 15-1, p 6, ¶ 8], she does not allege that any previous business dealings between Platinum and Erie had any effect whatsoever on her insurance for the vehicle. Finally, and more fundamentally, Plaintiff fails to allege any specific reliance on any allegedly deceptive conduct by Platinum and fails to allege how she was injured by such reliance.

### D. Plaintiff Fails to State a Claim for Negligence or Negligent Misrepresentation.

Plaintiff's allegations also fail to plausibly allege claims for negligence or negligent misrepresentation against Platinum. First, Plaintiff's negligence and negligent misrepresentation claims are alleged in the impermissible "shotgun" format and should be dismissed for that reason. See III.C.1. Second, also for the reasons previously described, she has failed to comply with Rule 9(b) for any misrepresentation-based claims. See III.C.2; Al-Jamal v. Michael Baker Corp., 2013 WL 3356573, at *6 (E.D.N.C. July 3, 2013) (applying Rule 9(b) to negligent misrepresentation claims). Third, none of the conduct that Plaintiff specifically alleges against Platinum sounds in negligence. Instead, she alleges conduct that she claims would support statutory violations under TILA or unfair or deceptive trade practices statutes or intentional acts. If Platinum actually engaged in the conduct that she alleges (which the contract documents show it did not), it would not be intentional—not negligent—conduct.

## CONCLUSION

The Court should dismiss Plaintiff's Complaint as against Platinum because (1) the Court lacks personal jurisdiction over Platinum, (2) Plaintiff's claims against Platinum are time-barred; and (3) Plaintiff's Second Amended Complaint fails to state a claim against Platinum.

This the 21st day of August, 2026.

YOUNG MOORE AND HENDERSON, P.A.

BY: /s/ Matthew C. Burke

CHRISTOPHER A. PAGE
N.C. State Bar No.: 19600
MATTHEW C. BURKE
N.C. State Bar No.: 52053
3101 Glenwood Avenue, Suite 200
Raleigh, NC 27612
Ph: 919-782-6860
Fax: 919-782-6753
Email: chris.page@youngmoorelaw.com
Email: matthew.burke@youngmoorelaw.com
*Attorneys for Platinum Pre-Owned, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, and that I served the pro se party listed below by U.S. Mail:

Pamela Denise Johnson
3361 Sunset Ave, Ste 748
Rocky Mount, NC 27804

Date: August 21, 2026.

YOUNG MOORE AND HENDERSON, P.A.

BY: /s/ Matthew C. Burke
CHRISTOPHER A. PAGE
N.C. State Bar No.: 19600
MATTHEW C. BURKE
N.C. State Bar No.: 52053
3101 Glenwood Avenue, Suite 200
Raleigh, NC 27612
Ph: 919-782-6860
Fax: 919-782-6753
Email: chris.page@youngmoorelaw.com
Email: matthew.burke@youngmoorelaw.com
*Attorneys for Platinum Pre-Owned, LLC*