FILED

SEP 15 2026

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY [signature] DEP CLK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

**No. 5:26-CV-320-D-RN**

**PAMELA DENISE JOHNSON,**
Plaintiff,

v.

CONSUMER PORTFOLIO SERVICES, INC.;
PLATINUM PRE-OWNED, LLC;
PRANCER CAPITAL CORP.;
AMERICAN RECOVERY SERVICES; ERIE INSURANCE COMPANY;
NC RECOVERY SERVICES, INC.;
et al.,
Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT PLATINUM PRE-OWNED, LLC'S MOTION TO DISMISS [DE 23]**

## I. INTRODUCTION

Platinum Pre-Owned, LLC ("Platinum") asks the Court to dismiss Plaintiff Pamela Denise Johnson's claims under Rules 12(b)(2) and 12(b)(6). The motion presents two distinct procedural questions that should not be blurred. For personal jurisdiction under Rule 12(b)(2), the Court may consider declarations and other jurisdictional evidence. For the Rule 12(b)(6) merits analysis, however, Platinum may not use contested outside documents to resolve disputed facts against Plaintiff merely by labeling those documents "integral" and "authentic."

That distinction matters here. Plaintiff's operative complaint specifically alleges that the GAP documentation contains a signature she disputes as authentic. DE 15-1 at 22, ¶¶ 189-192. Platinum's own memorandum acknowledges that dispute. DE 24 at 16 n.9. Yet

Platinum simultaneously asks the Court to accept the same disputed documents as authentic and use them to establish that Plaintiff authorized the GAP product, received particular disclosures, and signed other transaction documents. DE 24 at 12-13. Under Fourth Circuit law, the integral-document exception does not permit a court to resolve a genuine authenticity dispute against the plaintiff at the pleading stage. See Goines v. Valley Community Services Board, 822 F.3d 159, 164-66 (4th Cir. 2016).

Plaintiff does not contend that every signature on every document is unauthorized. She specifically denies executing the customer signature on Platinum's filed GAP Addendum and the signature appearing on the Buyer's Guide. She also possesses the GAP Addendum she retained from the transaction. A visual comparison of Plaintiff's retained copy with Platinum's filed Exhibit 6 shows the same underlying transaction information but materially different-looking handwritten customer signatures and differences in the seller-side handwriting and signature placement. Plaintiff does not ask the Court to decide who wrote those entries at this stage; the point is that authenticity is genuinely disputed and cannot be resolved against her on Rule 12(b)(6).

The personal-jurisdiction issue is closer. Plaintiff does not contend that Platinum is generally "at home" in North Carolina, and she does not rely merely on the fact that she later experienced injury there. She contends that Platinum was placed on notice that she resided in North Carolina and thereafter continued direct, claim-related communications concerning the same vehicle transaction, missing records, financing, GAP documentation, and insurance issues. Because no jurisdictional discovery has occurred, Plaintiff requests a fair opportunity to develop that limited record. If the Court ultimately concludes that North Carolina lacks personal jurisdiction over Platinum, Plaintiff alternatively requests severance and transfer of the Platinum claims to the United States District Court for the Middle District of Pennsylvania rather than dismissal.

## II. RELEVANT BACKGROUND

The transaction at issue occurred at Platinum's Carlisle, Pennsylvania dealership in January 2022. Platinum relies on a Retail Installment Sale Contract, Buyer's Order, title documents, a Buyer's Guide, a GAP Addendum, and an insurance agreement to argue that Plaintiff's allegations are contradicted by the written record. DE 24 at 2-6, 12-14. Plaintiff does not dispute that some transaction documents bear her genuine signature. She does dispute specific signatures and the authenticity or completeness of specific documents on which Platinum relies.

The Second Amended Complaint alleges, among other things, that Platinum misrepresented financing approval, charged approximately $1,000 for GAP coverage

Plaintiff contends she did not authorize, imposed or characterized a $34 charge inconsistently, failed to provide certain disclosures, and engaged in deceptive conduct actionable under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). See DE 15-1 at 6, 22. Count XI is directed specifically against Platinum and expressly identifies GAP documentation containing a signature Plaintiff disputes as authentic. DE 15-1 at 22, ¶¶ 189-192.

Plaintiff further states that she retained a GAP Addendum provided shortly after the transaction and that the document in her possession materially differs in the handwritten signature fields from Platinum's filed GAP Addendum. She also repeatedly sought transaction records. During the 2026 Pennsylvania Attorney General mediation concerning Platinum, Platinum's General Manager, Jason Layton, submitted a written response addressing the January 8, 2022 Mitsubishi transaction and stating that copies of all signed documentation were available upon request. Plaintiff separately communicated with Platinum management and employees in 2026 concerning the same transaction, missing records, financing, GAP documentation, and insurance issues.

The present record also supplies a concrete 2026 notice-and-contact chronology. On February 17 and March 6, 2026, the Pennsylvania Office of Attorney General, Bureau of Consumer Protection, sent letters to Plaintiff at 2314 Saddle Run Court, Rocky Mount, North Carolina 27804 stating that a copy of her complaint "as presented to the Bureau" had been sent to Platinum and requesting a written response within twenty-one days. Ex. B at 1-2. Platinum's General Manager then responded in writing on Platinum's behalf, expressly acknowledging receipt of the complaint and addressing the same vehicle transaction, financing, insurance, document signing, and Plaintiff's post-sale concerns. Ex. B at 4. On April 9, 2026, the Bureau reported that its mediation had reached an impasse between Plaintiff and Platinum. Ex. B at 3.

Plaintiff also submitted a CFPB complaint on January 29, 2026. The CFPB status record states that it was unable to forward that complaint to the company for a response and instead referred the matter to the Federal Trade Commission on March 17, 2026 and entered it into the Consumer Sentinel Network. Plaintiff therefore does not rely on the CFPB matter as proof that Platinum itself received notice. The CFPB record is relevant, if at all, only to Plaintiff's chronology of efforts to pursue the dispute.

## III. STANDARDS OF REVIEW

### A. Rule 12(b)(6) and Outside Documents

A complaint survives Rule 12(b)(6) when its well-pleaded factual allegations, accepted as true and viewed in Plaintiff's favor, state a plausible claim for relief. Although a court may

consider a document submitted by a defendant when the document is integral to the complaint and authentic, that exception is limited. Goines, 822 F.3d at 164-66. Where authenticity is genuinely disputed, or where the defendant asks the Court to accept the defendant-created document's account over contrary allegations, the Court may not simply resolve the factual conflict against the plaintiff. Id. at 166-68.

If the Court considers matters outside the pleadings on the Rule 12(b)(6) merits that do not fall within a recognized exception, Rule 12(d) requires conversion to Rule 56 and a reasonable opportunity for the parties to present pertinent material. Fed. R. Civ. P. 12(d). If conversion occurs before Plaintiff has had a fair opportunity to obtain essential evidence, Rule 56(d) permits the Court to defer consideration and allow discovery.

**B. Rule 12(b)(2)**

Plaintiff bears the burden of establishing personal jurisdiction, but the burden and procedure depend on the stage of the case. If the Court decides the issue on the initial filings and affidavits without a developed jurisdictional record, Plaintiff need only make a prima facie showing. Grayson v. Anderson, 816 F.3d 262, 268-69 (4th Cir. 2016). A court may ultimately apply a preponderance standard, but only after the parties have received a fair opportunity to present jurisdictional evidence and legal argument. Id.

**IV. ARGUMENT**

**A. Platinum Cannot Use Disputed-Authenticity Documents to Contradict the Complaint Under Rule 12(b)(6).**

Platinum's principal merits argument depends on treating its exhibits as established facts. It asserts that the contract documents show Plaintiff received the Buyer's Guide, authorized the $34 charge, signed the GAP Addendum, and approved the $1,000 GAP product. DE 24 at 12-13. But Platinum's own memorandum also acknowledges Plaintiff's pleaded dispute concerning the authenticity of the GAP signature. DE 24 at 16 n.9. Those positions cannot be reconciled by simply declaring the exhibit authentic.

Goines controls the procedural problem. The Fourth Circuit permits consideration of an integral outside document at Rule 12(b)(6) only when authenticity is not genuinely disputed; it also cautions courts against crediting a defendant-created document's factual account when the complaint disputes that account. 822 F.3d at 164-68. Here, Plaintiff's authenticity challenge existed in the operative complaint before Platinum filed its motion. It is not a new theory created in response to dismissal.

Plaintiff's declaration narrows the dispute. She does not claim that every signature is false. She specifically denies executing the customer signature appearing on Platinum's filed

GAP Addendum and the signature appearing on the filed Buyer's Guide. She also states that she possesses the GAP Addendum she retained from the transaction. The preprinted transaction information on that retained copy corresponds to the same vehicle and transaction, while the handwritten customer-signature and seller-side fields visibly appear different from Platinum's filed Exhibit 6. Those differences do not require the Court to make a handwriting finding now; they reinforce that authenticity is genuinely disputed and that originals, source files, document custody, scan history, and transaction-system records are proper subjects for discovery.

Accordingly, the Court should decline to use the disputed exhibits to contradict Plaintiff's well-pleaded allegations. If the Court wishes to rely on contested extrinsic merits evidence, Plaintiff requests conversion only after a reasonable opportunity for targeted discovery under Rules 12(d) and 56(d). That discovery would include the original or native transaction records, document audit trails, dealer-management-system entries, GAP enrollment/transmission records, and the source files from which Platinum produced the disputed exhibits.

**B. The Dorazio Declaration Does Not Resolve the Disputed-Signature Issues.**

Plaintiff does not seek wholesale exclusion of Jen Dorazio's declaration from the Rule 12(b)(2) jurisdiction analysis. Affidavits are proper evidence on a personal-jurisdiction motion. Nor does Plaintiff dispute that an employee with appropriate knowledge may testify about Platinum's corporate locations and employees.

The declaration nevertheless does not establish that Dorazio personally witnessed Plaintiff execute the GAP Addendum, the Buyer's Guide, or any other disputed signature. It does not state that Dorazio participated in the January 2022 sale, observed Plaintiff sign the disputed documents, recognizes Plaintiff's handwriting, or created the disputed documents. Thus, whatever weight the declaration may carry regarding Platinum's Pennsylvania offices, it does not eliminate the specific authenticity disputes on which Platinum's Rule 12(b)(6) merits argument depends.

**C. The Complaint Gives Platinum Fair Notice; Any Rule 9(b) Deficiency Should Be Addressed by Particularization, Not Merits Fact-Finding.**

Platinum argues that Plaintiff's consumer-protection allegations are impermissibly general and, to the extent they sound in fraud, fail Rule 9(b). The operative complaint, however, identifies the transaction, the dealership, the January 2022 time frame, the alleged financing-approval representation, the approximately $1,000 GAP charge, the disputed GAP documentation, the $34 fee, and Plaintiff's alleged reliance. Count XI specifically

identifies Platinum and the conduct supporting the Pennsylvania UTPCPL claim. DE 15-1 at 22, ¶¶ 189-192.

Rule 9(b) ordinarily requires the time, place, contents, identity of the speaker, and what was obtained by the alleged misrepresentation. Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). Harrison also cautions that dismissal should not be reflexive where the defendant has been made aware of the particular circumstances it must defend and the plaintiff possesses substantial prediscovery evidence. Id. Platinum's extensive motion and transaction exhibits demonstrate that it understands exactly which sale, GAP product, documents, fees, and representations are disputed.

If the Court concludes that the identity of a particular salesperson, the wording of a representation, or another circumstance requires greater particularity, Plaintiff respectfully requests an opportunity to seek leave to amend in compliance with Rule 15 and Local Civil Rule 15.1, rather than dismissal with prejudice.

**D. Platinum's Limitations Arguments Do Not Warrant Dismissal of All Claims Against It.**

Platinum correctly notes that a traditional TILA damages claim is generally subject to the one-year limitations period in 15 U.S.C. § 1640(e). Plaintiff does not ask the Court to hold that the later production of a disputed document automatically restarts that period. She instead preserves any properly supported fraudulent-concealment or equitable-tolling argument based on what was concealed, when she actually discovered the relevant facts, and whether she exercised due diligence. See Edmonson v. Eagle National Bank, 922 F.3d 535, 548-49, 553-54 (4th Cir. 2019). Those questions should not be inflated into a basis for dismissing every claim against Platinum.

A statute-of-limitations defense may be resolved on Rule 12(b)(6) only when all facts necessary to the defense clearly appear on the face of the complaint. Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Plaintiff's 2026 regulatory and direct-document requests show that the records dispute was active before Platinum filed the present motion, although Plaintiff does not contend that those 2026 efforts, standing alone, establish equitable tolling of every shorter limitations period. The Court need not resolve every tolling question in order to reject Platinum's request for blanket dismissal.

Most importantly, Platinum has not shown that Count XI, the Pennsylvania UTPCPL claim, is facially untimely. Pennsylvania applies a six-year catchall limitations period to private UTPCPL actions. 42 Pa. Cons. Stat. § 5527(b); Gabriel v. O'Hara, 368 Pa. Super. 383, 395-96, 534 A.2d 488, 494-95 (1987). A January 2022 transaction challenged in an action filed in May 2026 is within six years. Thus, even if the Court ultimately rejects tolling as to a shorter

federal or North Carolina limitations period, the limitations argument does not justify dismissal of every claim against Platinum.

**E. The Court Should Permit a Fair Opportunity to Develop the Specific-Jurisdiction Record.**

Plaintiff does not contend that Platinum is subject to general jurisdiction in North Carolina. Platinum is a Pennsylvania dealership, the sale occurred in Pennsylvania, and Dorazio states that Platinum has no North Carolina offices or employees. The relevant question is specific jurisdiction: whether Platinum itself purposefully created forum contacts that give rise to or relate to the claims at issue. See Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 277-79 (4th Cir. 2009). Plaintiff also recognizes that her own residence in North Carolina, standing alone, cannot supply the required defendant-created contact.

The present record is more developed than Platinum's motion suggests. On February 17 and March 6, 2026, the Pennsylvania Office of Attorney General sent Plaintiff correspondence at her Rocky Mount, North Carolina address stating that a copy of her complaint "as presented to the Bureau" had been sent to Platinum and that Platinum had been asked to provide a written response within twenty-one days. Ex. B at 1-2. Platinum's General Manager, Jason Layton, then responded in writing on behalf of Platinum, acknowledging receipt of the complaint and addressing the January 8, 2022 Mitsubishi transaction, financing, insurance, signed documentation, and Plaintiff's post-sale concerns. Ex. B at 4. The Bureau later documented an impasse between Plaintiff and Platinum. Ex. B at 3.

Those records do not, by themselves, conclusively establish exactly which address information accompanied the complaint packet transmitted to Platinum. They do, however, identify a specific state-agency file, a specific complaint transmission to Platinum, and a written response from Platinum's General Manager. They therefore provide a concrete basis for narrow jurisdictional discovery into the complaint packet Platinum actually received, the address information contained in Platinum's customer-management records, and what Platinum knew about Plaintiff's North Carolina residence when later communicating with her.

The same chronology includes direct contacts with Platinum. On January 27, 2026, Plaintiff placed an outgoing call to Platinum at 717-218-5133, the seller telephone number identified on the GAP document. Her phone record reflects that the call lasted approximately 23 minutes. During a subsequent call to Platinum on March 17, 2026, at approximately 5:17 p.m., Plaintiff spoke with Platinum employee Geoffrey while Mr. Layton was unavailable. Plaintiff explained that she had previously spoken with Mr. Layton

regarding the transaction, missing records, financing charges, and insurance-related issues, and that she had not received the documents she had been told would be sent. Geoffrey stated that he had taken notes regarding Plaintiff's concerns and would relay the matter to Mr. Layton. Plaintiff later exchanged emails with Platinum employee Cory Henneghan on March 27 and March 28, 2026, concerning contracts, bills of sale, credit applications, insurance documents, and related transaction records. Ex. C. Dorazio's declaration does not address what address Platinum's records reflected during those contacts, what materials Platinum received from the Attorney General, or what its employees knew when communicating with Plaintiff.

The request is therefore not a generalized fishing expedition of the kind rejected in Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 402-03 (4th Cir. 2003). Plaintiff identifies discrete categories that could materially affect the jurisdictional analysis: the Attorney General complaint packet and transmittal actually received by Platinum, Platinum's customer-address history and CRM notes, communications with Plaintiff after receipt of that complaint, and any related communications with assignees or insurers. Because Plaintiff has not had jurisdictional discovery, the Court should permit that narrow development before making a final factual finding under a preponderance standard. See Grayson, 816 F.3d at 268-69.

**F. If Personal Jurisdiction Is Ultimately Lacking, the Court Should Sever and Transfer the Platinum Claims Rather Than Dismiss Them.**

If the Court ultimately determines that Platinum lacks sufficient claim-related contacts with North Carolina, the appropriate alternative is transfer rather than a limitations-sensitive dismissal. The Fourth Circuit interprets 28 U.S.C. § 1406(a) broadly to authorize transfer when an impediment such as lack of personal jurisdiction prevents adjudication on the merits. Porter v. Groat, 840 F.2d 255, 257-58 (4th Cir. 1988).

Platinum's Carlisle dealership is in Cumberland County, Pennsylvania, which lies within the Middle District of Pennsylvania. See 28 U.S.C. § 118(b). Platinum is therefore subject to personal jurisdiction in a federal court sitting in Pennsylvania with respect to this Pennsylvania transaction. If necessary, the Court may sever the claims against Platinum under Rule 21 and transfer those claims to the United States District Court for the Middle District of Pennsylvania under § 1406(a). Transfer would serve the interests of justice because Platinum simultaneously argues that several claims are already subject to limitations defenses. See Porter, 840 F.2d at 257-58.

**V. CONCLUSION**

For these reasons, Plaintiff respectfully requests that the Court deny Platinum's request for blanket dismissal. The Court should decline to use disputed-authenticity exhibits to resolve merits facts under Rule 12(b)(6); permit a fair opportunity for targeted jurisdictional discovery; and preserve Plaintiff's Pennsylvania UTPCPL claim and any other claim not facially barred. If the Court determines that additional pleading particularity is required, Plaintiff requests an opportunity to seek leave to amend. If the Court ultimately finds personal jurisdiction over Platinum lacking, Plaintiff requests that the Court sever and transfer the Platinum claims to the Middle District of Pennsylvania rather than dismiss them.

Dated: September 14, 2026
Respectfully submitted,

Pamela Denise Johnson, Plaintiff Pro Se
3661 Sunset Ave Ste 748
Rocky Mount, NC 27804
Email: Pamelaj0126@gmail.com
Telephone: (717) 680-3967

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2026, I served a true and correct copy of the foregoing Plaintiff's Memorandum in Opposition to Defendant Platinum Pre-Owned, LLC's Motion to Dismiss by U.S. First-Class Mail, postage prepaid, addressed to counsel of record as follows:

Christopher A. Page, Esq.
Matthew C. Burke, Esq.
Young Moore and Henderson, P.A.
3101 Glenwood Avenue, Suite 200
Raleigh, North Carolina 27612
Counsel for Platinum Pre-Owned, LLC

Respectfully submitted,

Pamela Denise Johnson, Plaintiff Pro Se
3661 Sunset Ave Ste 748
Rocky Mount, NC 27804
Email: Pamelaj0126@gmail.com
Telephone: (717) 680-3967